UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA     :     Case No. 3:02CR89 (EBB)
                        :
     v.                 :
                        :
DONOVAN SCOTT         :     May 2, 2005

## MEMORANDUM IN AID OF THE NECESSITY OF RE-SENTENCING

The Government respectfully submits this memorandum in aid of determining the necessity of re-sentencing. The memorandum briefly recounts the offense conduct and case history. See Part I. Second, it outlines the procedure to be followed in sentencing in the wake of United States v. Booker, 125 S. Ct. 738 (2005). See Part II. Third, it explains why various factors do not warrant a new sentence in light of United States v. Booker and the factors outlined in 18 U.S.C. § 3553(a). See Parts III and IV.

**I.    The Offense Conduct and Case History**

The defendant, Donovan Scott, is a native and citizen of Jamaica. The defendant first entered the United States through New York in 1985 and thereafter accumulated five criminal convictions. His first conviction occurred on February 23, 1990, when he was sentenced by a state court in Connecticut to a term of one year imprisonment for possession of a pistol without a permit.

His second conviction ensued soon after in California on September 21, 1990, when the defendant was convicted of Conspiracy to Possess Cocaine for Sale, in violation of §182.1 of the California Penal Code.

Defendant's third and forth convictions occurred in New York, when on October 8, 1992,

he was sentenced to 90 days imprisonment for Second-Degree Obstruction of a Governmental Official, and on March 17, 1995, when he was sentenced to a term of one to three years imprisonment for Attempted Sale of a Controlled Substance in the Third-Degree.  After his 1995 conviction, defendant was subject to deportation proceedings, and on October 28, 1996, the defendant was adjudicated an aggravated felon and deported from the United States to Jamaica.

Defendant Scott readily admits that only two months after his deportation he illegally returned to the United States.  Upon his return to the United States, the defendant resumed his criminal drug and gun activity.  On November 21, 2001, the defendant was convicted of Possession of Narcotics and Reckless Endangerment in the 1st Degree in the State of Connecticut, and was placed on probation.  The Department of Homeland Security, Immigration and Customs Enforcement (then called the Immigration and Nationality Service) was later notified that the defendant was in Connecticut serving a term of probation, and defendant was found in Bridgeport, Connecticut, on or about February 28, 2002.

On March 27, 2002, the defendant was charged with one court of Unlawful Presence of a Deported Alien, in violation of Title 8, United States Code, § 1326(a), and based upon the Government's filing of a Notice of Enhanced Penalties pursuant to § 1326(b) (2) of that same title, the defendant was subject to enhanced penalties.  Defendant pleaded guilty to this offense on July 11, 2002.  On October 4, 2002, following the Court's determination that the appropriately calculated Sentencing Guideline range was 70 to 87 months, the court sentenced the defendant to 70 months imprisonment, that being the low end of the Guidelines, to be followed by three years supervised release, and a special assessment of $100.00.  This sentence was appealed to the United States Court of Appeals for the Second Circuit and affirmed, but the case was held

2

pending the Supreme Court's decision in <u>United States v. Booker</u>.  On February 16, 2005 the case was remanded to this Court.

## II.  <u>Sentencing in the Wake of *Booker*</u>

In <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), the Supreme Court held that the United States Sentencing Guidelines, as written, violate the Sixth Amendment principles articulated in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004).  The Court determined that a mandatory system in which a sentence is increased based on factual findings by a judge violates the right to trial by jury.  As a remedy, the Court severed and excised the statutory provision making the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), thus declaring the Guidelines "effectively advisory." <u>Booker</u>, 125 S. Ct. at 757.  This ruling results in a system in which the sentencing court, while required to consider the Guidelines, may impose a sentence within the statutory maximum penalty for the offense of conviction.  The sentence will be subject to appellate review for "reasonableness."  <u>Id</u>. at 765.

The Court of Appeals for the Second Circuit has offered some initial guidance to sentencing courts on how to proceed with sentencing in the wake of <u>Booker</u>.  In <u>United States v. Crosby</u>, 397 F.3d 103 (2d Cir. 2005), the Court summarized the impact of *Booker* as follows:

> First, the Guidelines are no longer mandatory. Second, the sentencing judge must consider the Guidelines and all of the other factors listed in section 3553(a). Third, consideration of the Guidelines will normally require determination of the applicable Guidelines range, or at least identification of the arguably applicable ranges, and consideration of applicable policy statements. Fourth, the sentencing judge should decide, after considering the Guidelines and all the other factors set forth in section 3553(a), whether (i) to impose the sentence that would have been imposed under the Guidelines, i.e., a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence. Fifth, the sentencing judge is entitled to find all the facts appropriate for determining either a Guidelines sentence or a non-Guidelines sentence.

Id. at 113.

      In other words, a sentencing now involves two analytic stages: first, a determination of the applicable Guideline range (including any departures); and second, a determination of whether in light of the Guidelines and the other factors listed in § 3553(a), there is any reason to impose a non-Guidelines sentence.

      As to Stage One, the applicable Guideline range "is normally to be determined in the same manner as before Booker/Fanfan." Id. at 112; see id. at 111. In limited circumstances, "precise calculation of the applicable Guidelines range may not be necessary" when a judge determines that either of two (not necessarily overlapping) ranges applies, and if "the sentencing judge, having complied with section 3553(a), makes a decision to impose a non-Guidelines sentence, regardless of which of the two ranges applies." Id. at 112. Such may be true in cases involving "complicated matters, for example, determination of monetary loss," or "close questions . . . as to the precise meaning or application of a policy statement authorizing a departure." Id. In general, however, Stage One requires the Court to engage in the familiar process of making factual findings by a preponderance of the evidence, and interpreting and applying the Guidelines to those facts in order to ascertain the appropriate sentencing guidelines range.

      As to Stage Two, the judge must consider the Guidelines in conjunction with the other factors enumerated in § 3553(a), in order to determine whether there is any reason to deviate from the Guideline range indicated in Stage One. These factors include: (1) "the nature and circumstances of the offense and history and characteristics of the defendant"; (2) the need for the sentence to serve various goals of the criminal justice system, including (a) "to reflect the

seriousness of the offense, to promote respect for the law, and to provide just punishment," (b) to accomplish specific and general deterrence, (c) to protect the public from the defendant, (d) "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; (3) the kinds of sentences available; (4) the sentencing range set forth in the Guidelines; (5) policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to victims.

Because the Guidelines reflect the Sentencing Commission's considered judgment about all of the factors set forth in § 3553(a), the Supreme Court and the Second Circuit have made it clear that the Guidelines continue to play a central role in a sentencing court's § 3553(a) calculus. Writing for the remedial majority in Booker, Justice Breyer explained that sentencing courts, "while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." 125 S. Ct. at 767. As the Court of Appeals has pointed out, "the excision of the mandatory aspect of the Guidelines does not mean that the Guidelines have been discarded." Crosby, 397 F. 3d at 111.

> [I] is important to bear in mind that Booker/Fanfan and section 3553(a) do more than render the Guidelines a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge. Thus, it would be a mistake to think that, after Booker/Fanfan, district judges may return to the sentencing regime that existed before 1987 and exercise unfettered discretion to select any sentence within the applicable statutory maximum and minimum. On the contrary, the Supreme Court expects sentencing judges faithfully to discharge their statutory obligation to "consider" the Guidelines and all of the other factors listed in section 3553(a). We have every confidence that the judges of this Circuit will do so, and that the resulting sentences will continue to substantially reduce unwarranted disparities while now achieving somewhat more individualized justice. In short, there need be no "fear of judging."

<u>Id</u>. at 113-114.

In the vast majority of cases, a sentence within the advisory Guideline range will be the most effective way of promoting uniform, fair sentencing throughout the nation in compliance with § 3553(a).  This view is shared by Congress and the Supreme Court.  As every Supreme Court justice in the various opinions in <u>Booker</u> recognized, the Guidelines carry out the express national policy, as articulated by Congress, that sentences be uniform across the country to the extent possible and be based on the offender's actual conduct and history.  <u>See</u>, <u>e.g.</u>, <u>Booker</u>, 125 S. Ct. at 761 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); <u>id</u>. at 759 (same) ("Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the real conduct that underlies the crime of conviction."); <u>id</u>. at 783 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); <u>id</u>. at 789 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity.").  <u>See</u> <u>also</u> <u>United States v. Wanning</u>, 354 F. Supp. 2d 1056, 1060 (D. Neb. 2005) ("The Guidelines and their ranges were explicitly crafted by the Sentencing Commission at the direction of Congress to implement the statutory purposes of sentencing.").

The Guidelines, aiming to achieve the uniform and appropriate treatment of like crimes, represent the distillation of 15 years of careful study of sentencing practices across the country, and correlate as well to the varying severity of crimes as defined by Congress.  The Guidelines, consisting of offense characteristics and various grounds for departure, address all of the

considerations relevant to sentencing, as articulated in 18 U.S.C. § 3553(a), not least of which are the nature and circumstances of the offense (which are covered thoroughly in Chapters 2 and 3 of the Guidelines Manual), the history and characteristics of the defendant (which are covered in Chapter 4 with respect to criminal history and Chapter 5 with respect to departures based on the most commonly considered personal characteristics), and the need to provide restitution to victims (Chapter 5, Part E).

Thus, fidelity to the Guidelines best accomplishes the purpose of fair and consistent sentencing outlined in § 3553(a), and should occur absent truly unusual circumstances. See Wanning, at 1061-62 (concluding that "judges should, in the exercise of their newly minted discretion, normally follow the Guidelines, and the ranges produced by them, because that approach represents the best (though an imperfect) method of sentencing"). The Government commends to the Court's attention the scholarly opinions of Judge Cassell in United States v. Wilson, 350 F. Supp. 2d 910 (D. Utah Jan. 13, 2005) ("Wilson I"), and 355 F. Supp. 2d 1269 (D. Utah Feb. 2, 2005) ("Wilson II") which reach this same conclusion. As Judge Cassell explained, the Guidelines represent the product of an expert commission which has studied the sentencing process at great length, under the specific mandate of Congress to fashion recommended sentences that carry out the purposes defined by Congress. The resulting Guidelines plainly reflect the public's will, as expressed by their democratically elected representatives, in that Congress has repeatedly approved of the Guidelines or acted to adjust them to accord with legislatively determined policies. Wilson further observed that guided sentencing appears to have had a positive impact in deterring criminal conduct throughout the country, and thus serves the purpose of deterrence as well as punishment and fairness. Judge Cassell further observed that

the Guidelines provide appropriate guidance, which is fully consonant with legislative policy, as to when particular offender characteristics properly factor into the sentencing calculus -- for example, forbidding consideration of factors such as race, religion, or socioeconomic status, and assigning only modest weight to factors such as family ties, age, and civic contributions. Wilson II, 355 F. Supp 2d at 1275-76. Importantly, Judge Cassell properly concluded that one of the primary goals of the criminal sentencing system is "equal justice under the law -- with a sentencing statute that mandates similar outcomes for similar crimes committed by similar offenders." Id. at 1286. "The only realistic way to insure this is to follow generally the Guidelines." Id. For all of these reasons, a court should "give heavy weight to the Guidelines in determining an appropriate sentence. In the exercise of its discretion, the court will only depart from those Guidelines in unusual cases for clearly identified and persuasive reasons." Wilson I, 350 F. Supp. 2d at 912.

Accordingly, a sentence within the Guideline range is presumptively reasonable, and accommodates the congressional purpose set forth in § 3553(a), affirmed by the Supreme Court, of obtaining fair sentences which are uniform to the extent possible. The Government anticipates that only sentences outside the Guideline range will be subject to appellate scrutiny for reasonableness in light of the Congressional mandate, absent truly extraordinary circumstances.

As explained below, this case does not present the rare case in which the Guidelines (including the rules governing departures) fail to produce a sentencing range that fully accords with the various factors set forth in § 3553(a). Therefore, the Government respectfully recommends that the Court uphold the previous sentence.

As discussed in Part II above, the Guideline range is ordinarily to be calculated in the

same manner as before <u>Booker</u>, and because the Guidelines reflect the Sentencing Commission judgment about all of the factors set forth in § 3553(a), they are presumptively reasonable.

**III.    <u>The Sentence Already Imposed By This Court Is Proper Under the Guidelines</u>**

The Guidelines range of 70 to 87 months previously recognized by this Court, and the imposed sentence of 70 months, is the appropriate sentence under the Guidelines. During the original sentencing and on appeal, defendant disputed the addition of two points pursuant U.S.S.G. § 4A1.1(d) of the United States Sentencing Guidelines. Pursuant to § 4A1.1(d), an increase of two points to defendant's criminal history score is warranted "if the defendant committed the instant offense while under any criminal justice sentencing, including probation, parole, supervised release, imprisonment, work release or escape statute." The defendant was on probation when he was found to be in the United States illegally by the INS, and thus the two level increase was determined by the Court to be appropriate under the law.

On appeal, the Second Circuit agreed with this Court that the two point increase was appropriate under U.S.S.G. §4A1.1. <u>United States v. Scott</u>, 387 F.3d 139, 143 (2nd Cir. 2004). In coming to this determination, the Second Circuit recognized that other circuits that have considered this issue have concluded that "an alien who is found in the United States while serving a separate criminal justice sentence should receive a two point increase." <u>Id</u> at 142. In response to the defendant's argument that he could not have avoided being found in the United States because he was under a criminal sentence, the Court stated that "Scott did not lack ability to control being found in the United States after imposition of his Connecticut sentence." <u>Id</u>.

It is also worth noting that a sentence of 70 months is within the Guidelines range that would have been imposed had there not been the two point increase. Without the U.S.S.G.

§4A1.1 increase, the defendant's Sentencing Guideline range would have been predicated upon the same adjusted Guideline range, that being a base offense of 8 pursuant to U.S.S.G. §2L1.2, with a 16-level increase pursuant to the aggravated felony enhancement (U.S.S.G. §2L1.2(b)(1)(A)), and a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. §3E1.1. Without the two-point increase for committing the offense while on probation (U.S.S.G.§4A1.1(d)), the defendant's criminal history would have been reduced from a category V to a category IV. The resulting range commensurate with an offense level of 21 coupled with a criminal history category of IV would have been 57 to 71 months. And as noted, the Court's sentence of 70 months would have been within the lower Sentencing Guideline range.

## IV.    The Sentence Already Imposed By This Court Is In Accordance With § 3553(a)

This case does not present the rare case in which the Guidelines (including the rules governing departures) fail to produce a sentencing range that fully accords with the various factors set forth in § 3553(a). The defendant engaged in criminal conduct prior to his deportation and continued that criminal conduct after his illegal reentry. The defendant was found in the United States while serving a term of probation for Possession of Narcotics and Reckless Endangerment in the 1st Degree, as a result the defendant received a two-point increase in his criminal history score and a sentence of 70 months. A 70 month sentence, in accordance with the Guidelines, takes into account the defendant's extensive criminal history, promotes respect for the law, avoids unwarranted sentencing disparities, and is in keeping with all of the other factors set forth in § 3553(a). As the Court stated at the defendant's sentencing, "[w]hat offends me...is that those people who want to take advantage of all that the United States has to offer, nevertheless, engage in criminal activity while they're here. That, I find unacceptable."

(Entry #21, October 28, 2002, Transcript of Sentencing Proceedings at pages15-16)

**IV.**    <u>**Conclusion**</u>

The defendant's original sentence was in conformity with the Sentencing Guidelines and this case does not present the rare case in which the Guidelines fail to produce a sentencing range that accords with the factors set forth in § 3553(a).  For the foregoing reasons, re-sentencing is not necessary.


Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY


By:    _____
       WILLIAM J. NARDINI
       ASSISTANT UNITED STATES ATTORNEY
       Federal Bar No. ct16012

For:   DEBORAH R. SLATER
       ASSISTANT U.S. ATTORNEY
       Federal Bar No. ct04786
       450 Main Street, Room 328
       Hartford, CT 06103
       Tel: (860) 947-1101

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on this 2nd day of May, 2005, a true and correct copy of the foregoing Motion was served by first-class mail upon defense counsel:

Thomas G. Dennis, Esq.
Chief Federal Public Defender
10 Columbus Boulevard, Floor 6
Hartford, CT 06106

      By:   _____
            WILLIAM J. NARDINI
            ASSISTANT UNITED STATES ATTORNEY

      For:   DEBORAH R. SLATER
            ASSISTANT UNITED STATES ATTORNEY

12