UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| vs. | : | CRIMINAL NO.  3:02CR89(EBB) |
| DONOVAN SCOTT | : | May 2, 2005 |

**MEMORANDUM IN SUPPORT OF RESENTENCING**

**I      Background**

On or about March 27, 2002, Donovan Scott was charged in a one count indictment with being found unlawfully in the United States, after having previously been deported, in violation of 8 U.S.C. § 1326(a)[1]. He entered a plea of guilty to this charge on July 11, 2002 and was sentenced in October to a 70 month term of imprisonment to be followed by three years of supervised release.

At the time Mr. Scott's presence in the United States was discovered, he was serving a sentence of probation imposed by the Connecticut State Courts. Indeed, it was Mr. Scott's probation officer who notified the Immigration authorities of his alien status and he was taken into custody at the Probation Office.

At sentencing, over the defendant's objection, the Court applied § 4A1.1(d)[2] of the sentencing guidelines and increased Mr. Scott's criminal history score by two, on the ground that he was on probation at the time he was "found"[3]. This resulted in his Criminal History Category (CHC) being

---

[1] The government subsequently filed a Notice of Enhanced Penalties alleging that Mr. Scott's deportation followed his conviction on two aggravated felonies.

[2] U.S.S.G. § 4A1.1:
  Criminal History Category
     The total points from items (a) through (f) determine the criminal history category in the Sentencing Table in Chapter Five, Part A.
*******
     (d) Add 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.

[3] The Court's factual finding that Scott was serving a criminal justice sentence at the time he was found violated the Sixth Amendment. United States v. Booker, 125 S.Ct 738, 749-50.

increased from IV to V, and the sentencing guideline range being raised from 57-71 months to 70-87 months. He was sentenced at the bottom of the range.[4]

Mr. Scott took a timely appeal. On October 21, 2004, the Court of Appeals issued a decision affirming the sentence imposed. United States v. Scott, 387 F.3d 139 (2d Cir. 2004). The Court held the mandate however, pending the Supreme Court's decision in the consolidated cases of United States v. Booker and United States v. Fanfan, 125 S. Ct. 738 (2005). On January 12, 2005, the Court issued its decision in these cases, holding the guidelines unconstitutional to the extent they required a sentencing court to enhance a sentence on the basis of judicially found facts. By way of remedy, the Court invalidated two provisions of the Sentencing Reform Act (SRA) that made the guidelines mandatory, thereby rendering the guidelines "effectively advisory". Id. at 757. Having stricken the SRA's provision governing the standard of review applicable to sentencing decisions the Court set a new standard, that is one of "reasonableness." Id. At 766.

In United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the Court of Appeals outlined the procedures to be followed on the remand of pre Booker/Fanfan sentences that were pending on direct appeal. The District Court must make an initial decision on whether to resentence the defendant, now being informed that the guidelines are no longer mandatory. Id. at 117. In making that threshold determination, the Court should obtain the views of counsel at least in writing, but need not require the presence of the defendant. Id. at 120. The test to be applied in determining whether a resentencing is warranted is whether the original sentence would have differed in a non-trivial manner from that actually imposed if the Court did not feel bound by what were then regarded as mandatory sentencing guidelines. If so, then the error in imposing the original sentence is harmful, satisfies plain error analysis, and warrants resentencing. Id at 118.

---

[4]Mr. Scott also argued for a downward departure over the basis that the application of the enhancement, under the facts of his case, resulted in his criminal history score overstating the seriousness of his actual conduct because he was being punished more severely than others who reentered after deportation solely on the basis of his status when he was "found." No departure was granted.

- 3 -

## II      Resentencing is Appropriate

The imposition of a two level increase in Mr. Scott's criminal history score under the facts presented here is fundamentally unfair.  He has been subjected to enhanced punishment through the application of a guideline that was never intended to apply to such a case and which increases his sentence not on the basis of any criminal act or omission on his part but rather on the wholly fortuitous circumstance of the point in time at which he happened to be "found" by the immigration authorities. The obvious intent of Section 4A1.(d) is to impose additional on those who commit a new offense while already serving a sentence for a prior crime because such repeated misconduct indicates both a higher degree of culpability and an increased likelihood of recidivism.  These considerations do not apply when the defendant engages in no criminal conduct but merely has the misfortune of being found while he is serving a sentence, rather than before it is imposed of after its completion.[5]

Mr. Scott did not escape additional punishment for having committed the underlying state offense.  His criminal history score was rightfully increased on the basis of the offense for which he was placed on probation (PSR ¶ 25).  That would have resulted in an appropriate criminal history score if he had been sentenced to time served, a fine, unconditional discharge, or if he was discovered by the agents at the time of arrest, entry of the guilty plea, or after his term of probation was completed.  The addition of two criminal history points because he happened to be discovered during a narrow time frame was based on the wording, but clearly  not the intent of 4A1.1(d) and produced an absurd result:

> Congress did not intend that the guidelines be imposed in a mechanistic fashion.... The purpose of the sentencing guidelines is to provide a structure for evaluating the fairness and appropriateness of the sentence of an individual offender, not to eliminate the thoughtful imposition of individualized sentences. (citation omitted)

United States v. Fernandez, 877 F.2d 1138, 1144 (2d Cir. 1989).

---

[5]The unique nature of this offense is amply demonstrated by the following example: If the defendant is deported, returns and lives in the U.S. for several years, commits a series of violent crimes and then returns to his homeland prior to being found, he has not "committed" this offense.  So far as counsel can determine this is the only criminal statute in the code that depends on the efficiency, luck, and abilities of the agents for its commission, rather than merely its detection.

- 4 -

With all due respect, the Court of Appeals misapprehended defendant's argument when it affirmed the sentence. The thrust of Scott's argument was not that he should not be punished for committing a criminal offense after reentering, or that he lacked the ability to terminate his illegal presence while under probation. Scott, 387 F.3d 142-43. Rather, his argument is simply that there is no logical reason for him to be **punished more severely** than other aliens who reenter the country illegally and commit additional crimes, but who are fortunate enough to be found before any sentence is imposed or who manage to escape detection until after the sentence is completed.

Scott does not contend that he should not be punished for his offense; rather that he be punished fairly and equally to other defendants with similar criminal records who have been found guilty of identical conduct. The Sentencing Commission operates under a statutory mandate to establish policies that "provide certainty and fairness" and which avoid "unwarranted sentencing disparity". 28 U.S.C. § 991(b)(l)(B). In the absence of any articulated reason as to why Scott should be sentenced more harshly than others, the increase creates an unwarranted disparity that is unreasonable. Resentencing at CHC IV with guidelines of 57-71 months is fully warranted.[6]

## CONCLUSION

A sentencing Court is obligated to impose a sentence that is "sufficient, but not greater than necessary" to comply with, the purposes of sentencing set forth in 18 U.S.C. §3553(a)(2). This statutory provision is not just another factor to be considered in arriving at a just and reasonable sentence. Rather, it sets an independent limit on the sentence the Court may impose. The imposition of a sentence greater than necessary to meet the four purposes of sentencing is per se unreasonable.

Because Mr. Scott's sentence is greater than that imposed on other illegal aliens who are guilty of the same conduct and who have identical criminal records, it is obviously "greater than necessary" and he should be returned to Court for resentencing.

---

[6] Even though there is overlap between the two sentencing ranges, the Court, at sentencing, indicated that a sentence at the bottom of the range is appropriate because of Mr. Scott's impending deportation. (Sentencing transcript at 16)

- 5 -

        Respectfully submitted,

        THE DEFENDANT,
        DONOVAN SCOTT

Dated: May 2, 2005        /s/
        Thomas G. Dennis
        Federal Defender
        10 Columbus Blvd, FL 6
        Hartford, CT 06106-1976
        Bar No. ct05100
        (860) 493-6260

## CERTIFICATION

    I HEREBY CERTIFY that a copy of the foregoing Memorandum in Support of Resentencing has been mailed to Deborah Slater, Assistant United States Attorney, Federal Building, 450 Main Street, Hartford, CT 06103, on this 2nd day of May 2005.

        /s/
        Thomas G. Dennis